UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| JOE HAND PROMOTIONS, INC., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No.: 3:22-CV-59-TAV-DCP |
| KRAZY CHICKEN INTERNATIONAL LLC d/b/a KRAZY CHICKEN INTERNATIONAL, ALICE CUPP a/k/a ALICE MINNICK, and JEREMY CHANCE MINNICK, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This civil action is before the Court on plaintiff's Motion for Default Judgment [Doc. 19]. Plaintiff seeks to hold defendants liable for a violation of the Communications Act of 1934 (the "Act"). For the reasons stated *infra*, plaintiff's motion [Doc. 19] will be **GRANTED**.

**I.    Background**

The Court takes as true the factual allegations in the complaint. *Bogard v. Nat'l Credit Consultants*, No. 1:12-CV-2509, 2013 WL 2209154, at *3 (N.D. Ohio May 20, 2013). Plaintiff distributes and licenses broadcasts of sporting events to commercial establishments [Doc. 1 ¶ 8]. At all relevant times, Alice Cupp and Jeremy Chance Minnick were "officer[s], director[s], shareholder[s], member[s] and/or principal[s] of" and "had a right and ability to supervise" and "an obvious and direct financial interest in the activities of" Krazy Chicken International, LLC (the "Establishment") [*Id.* ¶¶ 2–4].

Plaintiff had the exclusive right to distribute to commercial establishments broadcasts of "*Deontay Wilder v. Tyson Fury II*" (the "Fight") [*Id.* ¶¶ 1, 9]. Accordingly, defendants could have legally broadcasted the Fight at the Establishment only by contracting with plaintiff and paying plaintiff's licensing fee of $1,450 [*Id.* ¶¶ 9, 11; Doc. 20-2]. However, rather than paying the licensing fee, defendants and/or their agents obtained the Fight and displayed it to their patrons by interfering with cable and satellite signals [Doc. 1 ¶¶ 12–13, 15]. To verify these actions, plaintiff's auditor visited the Establishment on the night of the Fight and observed that: (1) the Establishment broadcasted the Fight on a 65-inch television screen; (2) approximately 30 patrons were present; and (3) the Establishment served food and drinks [Doc. 20-3 p. 1].

Defendants allegedly intercepted the Fight "willfully and with the purpose and intent to secure a commercial advantage and private financial gain" [Doc. 1 ¶ 14]. Plaintiff avers defendants' actions caused plaintiff to suffer financial harm via a lost licensing fee, incalculable lost profits, diminished goodwill, and other financial harm, and plaintiff provides evidence in support of its losses [Doc. 20 pp. 6–11; Docs. 20-2, 20-3, 21, 22]. Plaintiff also provides news articles and screenshots from Facebook to demonstrate the individual defendants' ownership of the Establishment and that the Establishment advertised that it would broadcast the Fight [Docs. 21-1, 21-2, 21-3, 21-4, 21-5].

On February 15, 2022, plaintiff filed its complaint against defendants asserting claims under the Act [Doc. 1]. On May 9, 2022, plaintiff applied to the Clerk of Court for an entry of default as to defendants because they failed to respond or otherwise defend in

this action [Docs. 12, 13, 14, 15], and the Clerk entered default on May 31, 2022 [Docs. 16, 17, 18]. Plaintiff now seeks a default judgment against defendants [Doc. 19].

## II. Analysis

Federal Rule of Civil Procedure 55 "contemplates a two-step process for obtaining a default judgment against a defendant who has failed to plead or otherwise defend." *Banner Life Ins. Co. v. Columbia State Bank*, No. 3:19-CV-119-TAV-HBG, 2020 WL 3977635, at *1 (E.D. Tenn. July 14, 2020). "First, pursuant to Rule 55(a), a plaintiff must request from the Clerk of Court an entry of default, describing the particulars of the defendant's failure to plead or otherwise defend." *Id.* If the clerk enters default, "the plaintiff must then move the Court for entry of default judgment pursuant to Rule 55(b)." *Id.*

After the clerk has entered default, the court must take the complaint's factual allegations as true. *Bogard*, 2013 WL 2209154, at *3. However, the court must determine whether the factual allegations "are sufficient to state a claim for relief as to [the] cause of action for which the plaintiff seeks default judgment." *J & J Sports Prods., Inc. v. Rodriguez*, No. 1:08-CV-1350, 2008 WL 5083149, at *1 (N.D. Ohio Nov. 25, 2008) (citation omitted). Although the court takes factual allegations regarding liability as true, the plaintiff must prove the amount of damages. *Bogard*, 2013 WL 2209154, at *3.

### A. Sufficiency of the Complaint

Plaintiff alleges defendants are liable under §§ 553 and 605 of the Act [Doc. 1 ¶¶ 16–19]. However, when a defendant is liable under both of these sections, the plaintiff
3

may elect to recover only under either section. *See J & J Sports Prods., Inc. v. Burgess*, No. 3:15-CV-721-JHM, 2017 WL 1788686, at *2 (W.D. Ky. Apr. 10, 2017) (stating that the majority of courts permit recovery under § 605 because it "allows for greater recovery"). Here, plaintiff elects to recover under § 605 [Doc. 20 p. 5]. Thus, the Court need only consider whether the complaint sufficiently alleges a § 605 claim.

Section 605(a) provides, "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. . . ." 47 U.S.C. § 605(a). This "provision applies to encrypted satellite transmissions." *Joe Hand Promotions, Inc. v. Rizzi*, No. 12-2526, 2013 WL 6243824, at *3 (W.D. Tenn. Dec. 3, 2013) (citation omitted). The Sixth Circuit courts apply a three-part test to determine whether a defendant has violated § 605(a); namely, courts consider whether: "(1) the plaintiff had a propriety interest in the communication; (2) the defendant intercepted that communication; and (3) the defendant unlawfully divulged the communication to its patrons." *Joe Hand Promotions*, *Inc. v. Turner*, No. 3:19-CV-12, 2021 WL 1383267, at *3 (S.D. Ohio Apr. 13, 2021) (citing *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 914–17 (6th Cir. 2001)). Section 605 provides for strict liability; therefore, a plaintiff need not prove a defendant's intent to violate the statute. *J & J Sports Prods., Inc. v. Sutton*, No. 3:17-CV-264-TBR, 2018 WL 297597, at *2 (W.D. Ky. Jan. 4, 2018) (citation omitted).

The Court finds that the complaint sufficiently alleges defendants violated § 605(a). First, plaintiff alleges it had a propriety interest in the Fight as it alleges it had "the exclusive right to license and distribute" it to commercial establishments and that plaintiff distributed it to licensees only after receiving a licensing fee [Doc. 1 ¶¶ 9–10]. Second, plaintiff alleges that defendants illegally obtained the Fight by "unauthorized satellite transmission or, alternatively, by unauthorized receipt over a cable system [where defendants] willfully intercepted or received . . . communications of the" Fight [*Id.* ¶ 12]. Finally, the complaint alleges defendants unlawfully divulged the Fight as it alleges they "transmitted, divulged and published" it to their patrons for commercial purposes without contracting with plaintiff, paying the licensing fee, or otherwise having authority to receive or broadcast it [*Id.* ¶¶ 11–14]. Thus, the complaint sufficiently alleges a § 605(a) violation. *See Turner*, 2021 WL 1383267, at *3 (applying this three-part test and finding § 605 liability in a similar case); *Joe Hand Promotions, Inc. v. Dewberry*, No. 19-CV-12218, 2020 WL 2764604, at *3 (E.D. Mich. May 28, 2020) (same).

Furthermore, even if the individual defendants had not personally intercepted the Fight, the complaint adequately alleges their vicarious liability. "To establish vicarious liability for a violation of § 605(a) . . . a plaintiff must show that the defendant had 'a right and ability to supervise the violations, and that she had a strong financial interest in such activities.'" *Rizzi*, 2013 WL 6243824, at *5 (citation omitted). Here, plaintiff alleges that the individual defendants owned, were "officer[s], director[s], shareholder[s], member[s] and/or principal[s] of" and "had a right and ability to supervise" and "an obvious and direct

5

financial interest in the activities of the Establishment" [Doc. 1 ¶¶ 3–4]. Moreover, plaintiff alleges the individual defendants or their agents intercepted the Fight for commercial purposes [*Id.* ¶¶ 14–15]. *See Dewberry*, 2020 WL 2764604, at *3 (holding that because of the defendant owner's default, he admitted that he had the right and ability to supervise and a financial interest in the violation); *Rizzi*, 2013 WL 6243824, at *5 (holding the defendant owner vicariously liable when he owned the premises and therefore per se had the "right and ability to supervise the violations and the requisite financial interest" even though he was not present during the violation). Consequently, the Court finds that the complaint sufficiently alleges that defendants violated § 605. Therefore, the Court will turn to the proper remedy.

### B. Damages, Attorneys' Fees, and Costs

Plaintiff seeks statutory and enhanced damages, attorneys' fees, and costs. Although the Court must take as true the factual allegations regarding liability in the complaint, plaintiff must prove the appropriate amount of damages. *Bogard*, 2013 WL 2209154, at *3. In determining damages, "[t]he Court may rely on affidavits [and other materials] . . . without the need for a hearing." *Dirs. of the Ohio Conf. of Plasterers & Cement Masons Combined Funds, Inc. v. Akron Insulation & Supply, Inc.*, No. 5:16-CV-1674, 2018 WL 2129613, at *5 (N.D. Ohio May 8, 2018).

#### 1. Statutory Damages

Plaintiff seeks $2,000 in statutory damages under § 605(e)(3)(C)(i)(II) [Doc. 20 pp. 6–8]. Section 605(e)(3)(C)(i)(II) provides, "the party aggrieved may recover an award

6

of statutory damages for [a § 605(a) violation] in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . ." 47 U.S.C. § 605(e)(3)(C)(i)(II). In calculating damages, the Sixth Circuit courts "typically consider the price the defendant(s) would have had to have paid to obtain the right to receive and display a broadcast, as well as the plaintiff's cost to police its broadcasting rights in the area." *Dewberry*, 2020 WL 2764604, at *3 (collecting cases). These courts also consider other factors, "including the number of patrons at the time of the violation, the seating capacity of the establishment, the rate charged by the plaintiff for the broadcast, [and] whether the defendant charged a cover to patrons or was likely to have obtained significant profits in another manner." *Joe Hand Promotions, Inc. v. Truong*, No. 3:19-CV-701, 2020 WL 7014303, at *4 (M.D. Tenn. May 20, 2020) (citation omitted).

The Court finds that $2,000 is a reasonable and just award of statutory damages. Plaintiff substantiates that if defendants had legally licensed the Fight, they would have had to have paid plaintiff a $1,450 fee "to obtain the right to receive and display" the Fight [Doc. 20-2; Doc. 22 ¶ 7]. *See Dewberry*, 2020 WL 2764604, at *3. Moreover, the Court considers that plaintiff's actual losses are likely substantially greater than this amount. For example, plaintiff has suffered lost profits in an incalculable sum due to lost fees from commercial establishments that choose not to license broadcasts because they cannot compete with pirates [Doc. 22 ¶¶ 4, 18–19]. Additionally, plaintiff substantiates that it has suffered harm to its reputation and goodwill [*Id.*]. Finally, the Court notes that courts have issued similar awards in similar cases. *See, e.g.*, *Truong*, 2020 WL 7014303, at *4–5

7

(collecting cases). Therefore, the Court finds $2,000 is an appropriate statutory damages award.

   2.   **Enhanced Damages**

Plaintiff seeks $10,000 in enhanced damages under § 605(e)(3)(C)(ii) [Doc. 20 pp. 8–11]. Section 605(e)(3)(C)(ii) provides a court with discretion to provide enhanced damages in an amount up to $100,000 when the violation was "willful[] and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii).

The Court first finds that defendants' conduct was willful. Conduct is "willful" when it demonstrates "disregard for the governing statute and an indifference for its requirements." *Dewberry*, 2020 WL 2764604, at *5 (citation omitted). By virtue of default, defendants have admitted their violation was willful [*See* Doc. 1 ¶¶ 12, 14]. *See Joe Hand Promotions, Inc. v. M & J Ballpark Inc.*, No. 15-CV-14484, 2016 WL 4750087, at *3 (E.D. Mich. Sept. 13, 2016) (citation omitted). Moreover, in this type of case, the Court can imply defendants' willfulness because "[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." *See J & J Sports Prods., Inc. v. Ramirez*, No. 3:16-CV-142-DJH, 2017 WL 4570310, at *3 (W.D. Ky. Apr. 10, 2017) (citation omitted). Additionally, the fact that defendants advertised that they would broadcast the Fight on Facebook suggests their violation was willful. *See J & J Sports Prods., Inc. v. SJV Invs.*, No. 16-CV-12271, 2017 WL 218079, at *3 (E.D. Mich. Jan. 19, 2017).

8

The Court further finds that defendants' actions were for a commercial advantage and/or private financial gain. Defendants have admitted their violation was for a commercial advantage and private financial gain by virtue of default [Doc. 1 ¶ 14]. *See M & J Ballpark Inc.*, 2016 WL 4750087, at *3 (citation omitted). Furthermore, the evidence demonstrates defendants' actions were in fact for a commercial advantage and private financial gain as they advertised that the Establishment would broadcast the Fight on Facebook and exhibited the Fight on a 65-inch television screen when 30 patrons were present. *See Joe Hand Promotions, Inc. v. Sports Page Bar, LLLP*, No. 3:19-CV-161-CRS, 2021 WL 3754551, at *3 (W.D. Ky. Aug. 24, 2021) (finding a purpose of private financial gain when the defendant advertised on Facebook); *M & J Ballpark Inc.*, 2016 WL 4750087, at *3 (finding a commercial purpose when the defendant exhibited a program to 14 customers on 48-inch screens).

Because defendants' conduct was willful and for a commercial purpose and/or private financial gain, enhanced damages are appropriate. Courts take various approaches to determine the appropriate amount of enhanced damages. *See J & J Sports Prods., Inc. v. Cruisin1, Inc.*, No. 4:17-CV-11155-TGB-DRG, 2019 WL 1584538, at *3 (E.D. Mich. Apr. 12, 2019) (collecting cases and contrasting approaches). But courts generally consider factors similar to those considered in determining the appropriate statutory damages award. *See Joe Hand Promotions, Inc. v. Granada Lounge, Inc.*, No. 11-13062, 2012 WL 447272, at *2 (E.D. Mich. Feb. 13, 2012).

9

Considering these factors, the Court finds that plaintiff's requested $10,000 award is excessive. This award equals five times plaintiff's statutory damages award amount. True, in a few cases, courts have issued enhanced damages awards with comparable multipliers [*See* Doc. 20 p. 11 (citing two cases)]. *See, e.g.*, *Rizzi*, 2013 WL 6243824, at *3 (awarding enhanced damages in an amount equal to six times the statutory damages award where the defendant was a repeat offender and knew yet disregarded the "correct process of obtaining authorization"). But the Court finds these cases to be anomalous; most courts in similar circumstances have issued a lesser award of enhanced damages. *See, e.g.*, *Turner*, 2021 WL 1383267, at *5 (enhanced damages award equal to statutory damages award); *Sports Page Bar, LLLP*, 2021 WL 3754551, at *3 (enhanced damages award less than statutory damages award); *J & J Sports Prods., Inc. v. Club Le'Elegant Corp.*, No. 14-12233, 2015 WL 13050011, at *2 (E.D. Mich. Mar. 31, 2015) (enhanced damages award equal to three times the statutory damages award).

The Eastern District of Michigan's decision in *Dewberry*, 2020 WL 2764604, is instructive. In that case, plaintiff sued the defendants for intercepting a fight, and the court held that $3,700 was an appropriate statutory damages award for many of the same reasons the Court has done so. *See id.* at *1, *3–4. On the issue of enhanced damages, *inter alia*, the court noted the defendants advertised the event on Facebook and Instagram. *Id.* at *5. However, the court rejected the defendants' request for an enhanced damages award equal to five times the statutory damages award amount and instead issued an award equal to two-and-one-half times the statutory damages award. *Id.* at *6. The court in part reasoned

10

that the defendants were not repeat offenders and that such an award was consistent with awards in similar cases. *Id.* (citations omitted).

Like in *Dewberry*, defendants advertised on Facebook that they would broadcast the Fight, and plaintiff has not alleged defendants have previously violated the Act. Consequently, in light of the factors discussed, the Court finds that an enhanced damages award equal to two-and-one-half times the statutory damages award is appropriate in this case and will adequately deter future violations of the Act. *See J & J Prods., Inc. v. Strange Clouds Hookah Lounge, Inc.*, No. 17-11300, 2018 WL 783248, at *3 (E.D. Mich. Feb. 8, 2018) (citation omitted) (noting that § 605 damages should deter violations of the Act). Therefore, the Court finds that $5,000 is an appropriate enhanced damages award.

### 3. Attorneys' Fees and Costs

Plaintiff requests $1,500 in attorneys' fees and $627 in costs under § 605(e)(3)(B)(iii) [Doc. 20 pp. 12–13]. Section 605(e)(3)(B)(iii) provides, "[t]he court . . . shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). Plaintiff substantiates its request with an affidavit from plaintiff's attorney [Doc. 21 p. 2].

First, plaintiff seeks $1,500 in attorneys' fees, and this sum is derived from six hours of effort preparing the instant motion at a rate of $250 per hour [*Id.*]. Courts have found comparable and indeed identical attorneys' fees reasonable in similar cases. *See, e.g.*, *Dewberry*, 2020 WL 2764604, at *6–7; *J & J Sports Prods., Inc. v. Happy Tavern, LLC*,

11

No. 15-13042, 2016 WL 1399255, at *3 (E.D. Mich. Apr. 11, 2016). The Court finds plaintiff's requested attorneys' fees award is reasonable and substantiated [Doc. 21 p. 2].

Second, plaintiff seeks to recover $627 in costs that plaintiff incurred to effectuate service in this action [*Id.*]. The Court finds that these costs are also reasonable and substantiated [*See id.*]. Therefore, the Court will award $1,500 in attorneys' fees and $627 in costs.

### III. Conclusion

For the foregoing reasons, the Court finds plaintiff is entitled to a default judgment as to its § 605 claim against defendants. Accordingly, plaintiff's motion [Doc. 19] will be **GRANTED**. The Court will **ORDER** that plaintiff recover from defendants a total sum of $9,127 and post-judgment interest according to law from the date of the contemporaneously-filed judgment order until the amount is paid in full as detailed:

| Statutory Damages | Enhanced Damages | Attorneys' Fees | Costs | TOTAL |
|---|---|---|---|---|
| $2,000.00 | $5,000.00 | $1,500.00 | $627.00 | **$9,127.00** |

The Clerk of Court will be **DIRECTED** to **CLOSE** this case. A separate order will enter.

ENTER:

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE